## CLARK BROS. COAL MINING CO. v. PENNSYLVANIA R. CO.

### (District Court, E. D. Pennsylvania.   December 14, 1916.)

### No. 2432.

COMMERCE ⬤═97—INTERSTATE COMMERCE LAW—ACTION ON AWARD OF COMMISSION.

A new trial granted in an action on an award of damages by the Interstate Commerce Commission for discrimination in the distribution of coal cars, on the ground that the award of the Commission, which was a part of the evidence submitted to the jury, under a later decision of the Supreme Court was made on an erroneous basis, and that the jury were not fully instructed on the point.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 147; Dec. Dig. ⬤═97.]

At Law.   Action by the Clark Bros. Coal Mining Company against the Pennsylvania Railroad Company.   On motion by defendant for new trial.   Motion granted.

A. L. Cole and A. M. Liveright, both of Clearfield, Pa., for plaintiff.

Henry W. Bikle and Francis I. Gowen, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.   A necessity to retry this case is to be regretted.   Not the least cause of regret is from the standpoint of the public interest in the prompt administration of justice, and in the certainties of the law and the sureness of the application of its principles.   If, however, error has crept into the trial which compels a new trial, the sooner it is discovered and corrected the better for all concerned.   The one thing which helps to reconcile us to this necessity is the opportunity it will afford to correct inadvertently used expressions in charge, which may have resulted in injustice to the plaintiff in the claim made for what for brevity we will call its right to interest.   One feature of the trial which may give the defendant the right to a retrial is this:

The defendant introduced what we will term mathematical evidence to establish with mathematical certainty and precision that the Commission by its award allowed damages on the basis that the plaintiff was entitled in the distribution of cars to a number of cars up to its full physical capacity rating, and was also entitled to have included among the cars available for distribution all private and fuel cars.   If the damages awarded were awarded on this basis, it is conceded an error was made, because the number of cars, by the Commission's own rule, was to be determined in another way.   This other way was to rate the mines, not according to their physical capacity alone, but their physical capacity plus their commercial output, during a certain preceding period, divided by two, and to limit the number of cars for ratable distribution to what are called unassigned cars, being all cars available for general commercial use after excluding private and fuel

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cars, and having thus found the share of each mine, to deliver to any mine its private cars and fuel cars consigned to it, but before delivering to it any unassigned cars to count against its share of such cars the private and fuel cars delivered to it. The result would be that no mine, which had received private or fuel cars, would have the right to receive any unassigned cars, unless its share of the unassigned cars exceeded the number of private and fuel cars delivered to it, and then only for the excess.

The evidence would at least tend to show that the award of damages was made by the Commission on this erroneous basis and would mathematically demonstrate this, unless the agreement of the mathematical results of the working out of this wrong rule of car distribution, with the results reached by the Commission, was a mere coincidence, or a necessary coincidence (as it might be), or the exact agreement in results can be otherwise explained. The trial judge submitted the question of the amount of damages to the jury to be determined under all the evidence. Under all the evidence, the mathematical evidence and the findings of the Commission were both included. If the mathematical evidence, in legal effect, merely tended to prove what was fairly a deduction of fact, this submission was of course proper, and it would have been error to have withdrawn the evidence of the Commission's findings. The trial judge was moreover justified, and indeed required to so submit the evidence of the award along with the other evidence, because this had been determined by the court of this district to be proper, and the trial judge was not only following the only guide which up to that time had been given him, but was controlled by the ruling previously made.

Since the trial, however, the law has been authoritatively pronounced for us in the case of Pennsylvania R. R. v. Jacoby, 242 U. S. 89, 37 Sup. Ct. 49, 61 L. Ed. ——. The mathematical evidence in that case was that the percentage relation which the shipments which the plaintiff might have made (on the basis of which damages were awarded) bore to the physical capacity output of the mine was mathematically expressed by the decimal figures 59.9. This had reference to one period which the action covered. The like expression of this relation with reference to the other period of the action was 59.6. The plaintiff had offered in evidence before the Commission certain distribution sheets. These showed that the mines favored by the railroad company had received in car tonnage during the one period .59.9 and during the other period 59.6 per cent. of their mine ratings, based upon the physical capacity of the mines, and as the plaintiff had received a less percentage, this established that these favored companies had received an undue, overlarge, and discriminatory allotment of cars. As these percentage figures were exactly the same percentage figures expressive of the allotment of cars which should have been made to the plaintiff which are disclosed by the award, we are afforded a mathematical demonstration that the Commission allowed damages to the plaintiff based upon the allotment of cars made to the favored shippers.

The defendant asked (by point 8 of its points of charge) that the correctness of this inference be submitted to the jury, and, if drawn

by them, that they should be instructed that the award was erroneous, and be further instructed that the plaintiff could not recover. The court refused to affirm this point. The refusal was adjudged error, and it was further adjudged that this error was not cured by proper instructions in the general charge.

One of the features of the Jacoby Case was that the finding of the Commission was the only evidence offered by the plaintiff. The instruction asked for, therefore, was the equivalent of binding instructions to the jury *if* (and we underscore the "if") they found the Commission had based its award upon the unfair percentage of capacity tonnage of the favored mines. The defendant had presented the same point, with this "if" conclusion stated as a fact, and asking for binding instructions. The trial judge refused the latter point, and there is in the opinion of the Supreme Court no word of direct criticism of this refusal. It is plainly intimated, and almost directly stated that no other inference than that set out in the point could be drawn; but it is to be observed that the ruling is confined to an affirmance of the eighth point, which left the question to the jury, and not to the point which took it from the jury, although here again a more drastic ruling is suggested as proper by the strengthening phrase that the court was "at least" of the opinion that the eighth point should have been affirmed. Thus has the law been settled to be so that all which remains to us is to apply it to the instant case.

We have here in effect the same evidence and almost in words the same testimony. We have likewise to all intents and purposes the same points, except in being framed to meet the difference in the evidence in the respect that in the present case there was and in the Jacoby Case there was not other evidence than the award. That with which we are now concerned is the answers. We are firm believers in the doctrine that charges ought not to be subjected to the hindsight test of verbal accuracy. If they are, the contrary doctrine will result in spineless charges, made up of abstract statements of the law, or in never entering judgments on verdicts rendered. The charge should, however, be free from errors of substance. If, at the time of this trial, we had been given the aid of the enlightening opinion in the Jacoby Case, the sixth point (one of the points corresponding to the seventh point in the Jacoby Case) would have been answered as it was answered or simply refused. The law of the point was affirmed, but we refused to take the question of fact from the jury. In this there was no error. The seventh point and others (corresponding to the eighth point of the Jacoby Case) we now know should have been affirmed. The answer is to have read into it what was said on the same subject in the general charge. When so read, the answer may be said to be an affirmance of the point. It was at least clearly so intended.

We are now constrained to find, however, that the answer does not give the defendant all to which it was entitled. Whether that which belongs to it is of less value than that which it received is a question which it has the right to decide. We cannot deprive it of any of its rights on the plea that what it received was of greater value than what

it was entitled to have. W., C. & P. R. R. Co. v. Broomall, 18 Wkly. Notes Cas. (Pa.) 44.

As the rule for a new trial must be made absolute, we need not advert to the other reasons assigned.

Rule absolute.